Jay Kelly **PINKERTON**, Appellant,

v.

The **STATE of Texas**, Appellee.

No. 68903.

Court of Criminal Appeals of Texas, En Banc.

July 13, 1983.

Rehearing Denied Sept. 28, 1983.

E. Dean Robert, Amarillo, Michael B. Charlton, Houston, for appellant.

Randall L. Sherrod, Dist. Atty., and John L. Davis, Asst. Dist. Atty., Canyon, Robert Huttash, State's Atty. and Alfred Walker, Asst. State's Atty., Austin, for the State.

## OPINION

TOM G. DAVIS, Judge.

Appeal is taken from a conviction for capital murder. V.T.C.A. Penal Code, Sec. 19.03(a)(2). Trial was in Nueces County following change of venue from Randall County. After finding appellant guilty of capital murder, the jury returned affirmative findings to the two special issues under Art. 37.071(b), V.A.C.C.P. Punishment was assessed at death.

Appellant was convicted of murdering Sarah Donn Lawrence, a married female, on the night of October 26, 1979, in the course of committing robbery or burglary with intent to rape.

In his first two grounds of error appellant challenges the sufficiency of the evidence to show that he committed robbery or burglary with intent to rape.

David Lawrence, husband of the deceased, testified that he called his wife at 9:30 on the night of October 26, and told her he would be home about 11:00.

Upon arriving home at 11:30 p.m., Lawrence found his wife with blood on the side of her face on the floor of their living room. His wife was lying face-up between the couch and the coffee table. The lower portion of her body was entirely nude. After examining her more closely, Lawrence noticed a large gaping hole in her throat with blood still running out of it. Her legs were spread apart and her panties had been rolled down to the bottom of her right leg.

Missing from the house was a large bowie knife which had been displayed on a rack in the master bedroom. Lawrence had last seen the knife in its place on the rack when he left for work at 3:00 p.m. on the 26th. The deceased's purse was also missing.

Lawrence testified that on the 27th he noticed the bottom of a window screen in the master bedroom had been pulled out somewhat and that there were red stains on the window sill underneath the screen.

Carolyn Sue Porter, an officer in the Amarillo Police Department, took several pictures at the crime scene. Porter took a photograph which revealed a palm print in blood on the inside of the deceased's left leg. State's Exhibit Number 17 is a latent palm print in blood which Porter lifted from the coffee table next to the deceased's body.

Sergeant Claude Free of the Amarillo Police Department took an inked palm print of the appellant as did Raymond Thomas of the same department.

Peter Belecastro, a fingerprint expert with the Federal Bureau of Investigation, compared photographs of the palm print on the deceased's leg with the print found on the coffee table and the palm prints of appellant taken by Free and Thomas. Belecastro testified that all of these prints were made by the same person, namely, the appellant.

Gary Chadwick, another police officer with the City of Amarillo, testified that he saw footprints in the alleyway outside the deceased's residence and followed them to an alleyway on 45th Street in Amarillo, right across from the appellant's residence.

Officer Everett Smith testified that he also viewed the footprints going down the alley from the Lawrence house to a point in an alleyway across from appellant's residence and described the footprints as tennis shoe tracks with dimple patterns on them. Smith stated that he saw the appellant on October 27, at 2:30 a.m. At that time appellant was wearing a tennis shoe with a dimple pattern on the bottom which appeared to match in size and pattern the footprints seen in the alleyway. No measurements were made of the prints in the alley.

Dr. Jose Diaz-Esquivel, a pathologist who examined the deceased at the scene of the crime and later performed the autopsy, tes-

tified that the deceased suffered thirty stab wounds or more to her arms, shoulders, neck, back, left hand, face, and abdomen. The cause of death was a stab wound to the neck with transaction of the hyoid bone and larynx and associated asphyxia. With reference to the abdomen wound, Dr. Diaz-Esquivel stated that the introduction of a male penis into the wound would be compatible and consistent with the evidence he found.

The doctor also testified that the deceased's vagina was distended and that something cylindrical in shape, possibly a penis, had been introduced into the vagina after death. Dr. Diaz-Esquivel stated that the stab wounds found on the deceased were consistent with wounds caused by a large knife and could have been caused by a bowie knife.

Officer Ken Ten Brink was the first to encounter appellant three and one-half hours after the murder. Ten Brink went to appellant's home and, not finding him there, searched the surrounding neighborhood, ultimately spotting appellant running across the parking lot of a bookstore a few blocks from the deceased's home. Though Ten Brink chased appellant through several well-lit areas yelling "police halt" and "police stop," appellant would not stop. Ten Brink finally caught up with the appellant as he attempted to climb over a tall picket fence. Appellant had on jeans and tennis shoes and his hair was slicked back.

Investigator Dennis Hendley helped Ten Brink capture the appellant. Hendley said appellant looked as if he had just stepped out of the shower.

Officer Greg Soltis testified that the blood found in the Lawrence house was located on and in the immediate area of the victim's body with a small amount being found on the window sill. When the body of the deceased was moved, Soltis discovered what was later determined to be the brass weight for the missing bowie knife. Soltis observed that the latent palm print lifted from the coffee table beside the deceased appeared to have been made in blood.

John Alley was a fellow inmate of appellant's in the Randall County Jail. He testified that over a six-month period appellant made several admissions of guilt in the deceased's murder:

"Q. What did he say to you specifically, sir, do you recall?

"A. The first thing that I ever heard him say was that he cut her tits off and set them on the television and he started laughing about it and that was it.

" . . .

"Q. Did he say he had done anything else concerning the killing of Sarah Donn Lawrence?

"A. Do you want the whole gruesome details of it?

"Q. Yes, sir I wish you would tell the jury.

"A. Sexually assaulted her.

"Q. Is that what he said in those words sir?

"A. Well, I'll get to it.

"Q. All right.

"A. He cut her stomach open and f——ed her in the wound until he come and he slashed her throat and he cut her breasts off."

Alley chose to testify because, "I have got a little three-year-old girl and pretty little wife and I'll be damned if I'm going to sit there and see somebody like that go free after he bragged for six months that he done it and it might be my wife or my daughter next time."

In support of his position that the evidence is insufficient to prove an intentional killing during the course of burglary with intent to commit rape, appellant argues that he never engaged in sexual intercourse with the deceased as that term is defined in the Penal Code. Further, "all the evidence points to the intent of the appellant to commit a brutal murder and to abuse the corpse of the victim."

V.T.C.A. Penal Code, Sec. 21.01(3), defines sexual intercourse as, "any penetration of the female sex organ by the male sex organ." There was evidence showing that appellant penetrated the deceased's abdomen with his sex organ and might have penetrated the deceased's vagina with his sex organ after she died.

Even if appellant is correct in asserting that one cannot have sexual intercourse with a dead person, the evidence is sufficient to show burglary with intent to commit rape.

■ The inquiry must focus on appellant's intent upon entering the deceased's home. Insufficiency of proof with respect to a rape or attempted rape is immaterial when the indictment alleges burglary with intent to commit rape. *Ford v. State,* 632 S.W.2d 151 (Tex.Cr.App.1982).

■ The intent with which entrance was made is an essential element of the offense of burglary and therefore must be pled and proved. *Ex parte Cannon,* 546 S.W.2d 266 (Tex.Cr.App.1977). Nevertheless, it is well settled in this State that the question of the intent with which a person unlawfully enters a habitation is a fact question for the jury, to be drawn from the surrounding circumstances. *Stearn v. State,* 571 S.W.2d 177 (Tex.Cr.App.1978).

In this case, the bulk of the evidence suggests primarily lustful motives on appellant's part when he entered the deceased's house. According to his fellow prisoner Alley, appellant admitted to "sexually assaulting" the deceased. "He cut her stomach open and he f——ed her."

Appellant left the deceased nude from the waist down with her legs spread apart. Somebody, not the deceased, had taken the time to roll her panties down to the bottom of one leg. The killer stuck a cylindrical object, approximately five to six inches in length, into the deceased's vagina. The pathologist testified that the object could have been a penis.

The jury could logically infer from the evidence that appellant intended to rape the deceased when he entered her habitation. His failure to accomplish rape as defined in the Penal Code does not alter his earlier intent.

Appellant's contention that "all the evidence points to the intent of the appellant

to commit a brutal murder and to abuse the corpse of the victim" is incorrect. The only physical evidence of sexual abuse after death concerns the cylindrical object inserted into the deceased's vagina.[1] Even on that point Dr. Diaz-Esquivel did not give an unequivocal answer. He stated that the deceased could have been alive when her husband returned home and found blood oozing out of her.

Alley's version of appellant's admission indicates that appellant cut open the deceased's abdomen and ejaculated into it before he slit her throat. Cause of death was a stab wound to the neck.

■ There was evidence from which the jury could logically infer that the deceased was sexually molested prior to death. We find there was sufficient evidence to support the jury's finding that the appellant entered the deceased's house intending to rape her.

Appellant also contends the evidence is insufficient to show that the killing took place during the course of a robbery. The State replies, inter alia, that it is only required to prove one of the two underlying offenses. Since the evidence is sufficient to support a conviction for murder during the course of burglary with intent to commit rape, it is unnecessary for us to reach the question of whether the evidence is also sufficient to support a conviction for murder during the course of robbery.

The indictment charged appellant with intentionally causing the deceased's death, "while in the course of committing the robbery of Sarah Donn Lawrence, *and* while in the course of committing the burglary of a habitation owned by David Lawrence with intent to commit rape." (Emphasis added.)

The charge instructed the jury to render a guilty verdict if it found beyond a reasonable doubt that the appellant murdered the deceased, "while in the course of committing the robbery of Sarah Donn Lawrence, *or* while in the course of committing the burglary of a habitation owned by David

Lawrence with intent to commit rape." (Emphasis added.)

In *Zanghetti v. State*, 618 S.W.2d 383 (Tex.Cr.App.1981), this Court, quoting approvingly from 1 Branch's Ann.P.C., 2nd Ed.Sec. 523, stated:

"If a statute creates only one offense . . . the different phases of the offense—that is, the different ways by which it may be committed—may be alleged in the same count if not repugnant to each other and if the punishment is the same, and the correct way of joining such is by the word 'and,' *and under such joinder proof of any one of such phases so joined is sufficient."*

See also *Quinones v. State*, 592 S.W.2d 933 (Tex.Cr.App.1980); *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), 428 U.S. 262, 96 S.Ct. 3235, 49 L.Ed.2d 929 (1976).

The State only had to prove one of the two underlying offenses in order to have the conviction upheld. Since the State proved murder during the course of burglary, we need not consider whether the evidence is sufficient to show murder during the course of robbery.

In his third ground of error, appellant complains of the trial court's failure to give a requested circumstantial evidence charge concerning the underlying offense of robbery and burglary. A charge on circumstantial evidence is no longer required under our case law. *Hankins v. State*, 646 S.W.2d 191 (Tex.Cr.App.1983).

In his fourth ground of error, appellant contends that the trial court erred in refusing to grant his motion to quash the indictment for failure to identify the residence or location within Randall County of the burglarized habitation. The indictment merely alleged that the murder and underlying offenses occurred in Randall County.

In *Nevarez v. State*, 503 S.W.2d 767, 768–69 (Tex.Cr.App.1974), we noted that, "Murder, burglary and theft are examples of offenses which may be committed anywhere within the county and it is only necessary in such cases to allege that the offense occurred within the county."

---

1. Alley was the only person who testified about     appellant cutting off the deceased's breasts.

In *Ward v. State*, 642 S.W.2d 782, 783 (Tex.Cr.App.1983), we reiterated the "long-standing," "seldom challenged," and "almost universal" rule that, "it is only necessary to allege the name of the county as the place where an offense was committed, (1) if the offense may be committed anywhere within the county, (2) the place where the offense is committed is not an element of the offense, and (3) the court in which the offense is tried has countywide jurisdiction." This rule applies even when the defendant files a motion to quash seeking a more specific location than the county.

█ Since a specific location is not an element of Sec. 19.03(a)(2) murder or of the offense of burglary, since murder or burglary may be committed anywhere within the county, and since this offense was tried in a State district court having countywide jurisdiction, the court did not err in refusing to grant appellant's motion to quash. See also *Hodge v. State*, 527 S.W.2d 289 (Tex.Cr. App.1975).

In his fifth ground of error, appellant argues that the trial court erred in refusing to quash the indictment for failure to specify the name of the intended victim of the burglary with intent to commit rape. Appellant relies on *Brasfield v. State*, 600 S.W.2d 288 (Tex.Cr.App.1980), and *King v. State*, 594 S.W.2d 425 (Tex.Cr.App.1980).

Both *Brasfield* and *King* stand for the proposition that when criminal conduct constituting an aggravating feature of an offense may be directed at a person other than the ultimate victim of the crime alleged, the specification of that person is a fact to which the accused is entitled should he request it by timely filed written motion to quash.

Here, burglary of a habitation was an aggravating feature of capital murder. The victim of that burglary was clearly noted in the indictment. Appellant was accused of murdering Sarah Donn Lawrence, "while in the course of committing the burglary of a habitation owned by David Lawrence with intent to commit rape."

█ The victim of a burglary is the owner of the burglarized building or habitation, not the person whose interests were potentially endangered by the accused's guilty intent. Thus, in the instant case, the requirements of *Brasfield* and *King* were satisfied when David Lawrence was named as the owner of the burglarized habitation.

Even if we extended *Brasfield* and *King* to necessitate the naming of the intended rape victim in a situation such as this, the appellant would not be entitled to any relief.

*Brasfield* and *King* only require that the victim of an aggravating offense be named if the indictment is susceptible of an interpretation that the victim was a person other than the named deceased.

The indictment charged the appellant with murdering Sarah Donn Lawrence in the course of robbing Sarah Donn Lawrence and in the course of burglarizing a house owned by David Lawrence with the intent to commit rape. We do not find this indictment to be susceptible of an interpretation that the intended victim of the intended rape was anyone other than the deceased. Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant contends that the trial court erred in failing to provide a copy of the names of the veniremen to the appellant at least two days prior to trial as required under Art. 34.04, V.A.C.C.P. The record affirmatively reflects that the appellant was served with such a list six days prior to the voir dire and announcement of ready. Appellant's sixth ground of error is overruled.

In his seventh ground of error, appellant argues that the trial court improperly admitted the testimony of appellant's fellow inmate, John Alley. Appellant concedes that his statements to Alley, made while both men were in jail, were not the result of any interrogation. He also acknowledges that the 1977 amendments to Art. 38.22, V.A.C.C.P., and our case law construing the amendments, no longer necessitate the exclusion of custodial statements that

do not result from interrogation. See *Autry v. State*, 626 S.W.2d 758 (Tex.Cr.App. 1982); *May v. State*, 618 S.W.2d 333 (Tex. Cr.App.1981).

█ Nevertheless, appellant contends that we misconstrued the meaning of the 1977 amendments and asks us to overrule *May* and *Autry*. We find appellant's one-paragraph discussion in support of his position unconvincing. The 1977 amendments to Art. 38.22, V.A.C.C.P., as they related to the use of statements not resulting from custodial interrogation, are crystal clear in meaning and have been correctly construed by this Court and other commentators. See, e.g., Bubany, The Texas Confession Statute: Some New Wine in the Same Old Bottle, 10 Tex.Tech.L.Rev. 67, 73–6 (1978). Appellant's seventh ground of error is overruled.

In his final ground of error, appellant contends that the trial court erred in permitting Alley to testify since his name did not appear on the witness list the State agreed to furnish appellant.

Appellant's counsel concedes that he knew the State was talking to inmates at the Randall County Jail, that he knew the nature of the discussions, and that he expected somebody from the jail to testify for the State. He was only surprised in the sense that he had never heard of this particular witness.

The prosecutor acknowledged at trial that he did not furnish written notice of Alley's testimony, but asserted that he orally notified the defense that Alley would testify approximately two weeks before he did so. Appellant's counsel, while agreeing that the State furnished him with some names of prisoners, disputed this point.

The State subpoenaed Alley on May 14, 1981, and the appellate record reflects that the subpoena and application for subpoena were on file in the case.

As an excuse for its failure to supply appellant with written notice of Alley's testimony the State asserts that it did not think it had to supply a written list of prisoner-witnesses and that it did not learn of Alley's story until after appellant had been furnished with the initial witness list.

At trial, the court overruled appellant's motion to exclude Alley's testimony but afforded counsel "whatever time you think you need" to talk to Alley:

"THE COURT: . . .

". . . I am going to overrule your motion, but I am not going to permit Mr. Alley to testify at this time.

"I'm going to give you an opportunity to talk to him outside the presence of the District Attorney's Office.

"In other words, I'll give you an opportunity to talk to him.

"MR. MANN: Would you like for us to do that right now?

"THE COURT: Whenever you want. If you want to.

"MR. MANN: For purposes of continuity, we might do it now.

"THE COURT: Do you want to wait until later or—

"MR. MANN: I think it might be, since the jury is already out—if you would give us a few minutes, we could do it now.

"THE COURT: If that's all right with you. I'll give you longer, whatever time you think you need."

After a recess during which appellant's counsel spoke with Alley, appellant reiterated his objection to Alley testifying. Appellant did not ask for a continuance or a further postponement so that he could talk at length with Alley or investigate matters related to Alley's testimony.

We do not find that the State acted in bad faith, though it should have provided written notice that Alley would testify. All parties are in agreement that the State maintained an open file policy throughout appellant's trial, that the State informed appellant's counsel it was interviewing fellow inmates of appellant, and that the State gave appellant's counsel the names of some of the inmates.

█ In light of the above, and given the trial court's strenuous efforts to insure appellant was not unfairly harmed by Alley's testimony, we cannot find that the court

abused its discretion in allowing Alley to testify. *Hightower v. State,* 629 S.W.2d 920 (Tex.Cr.App.1982). See also, *Haynes v. State,* 627 S.W.2d 710 (Tex.Cr.App.1982). Appellant's final ground of error is overruled.

The judgment is affirmed.