**Printcis C. MERRITT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 01–97–00673–CR, 01–97–00674–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 10, 1998.

Kyle B. Johnson, Houston, for Appellant.

John B. Holmes, Carol M. Cameron, Houston, for Appellee.

Before Justices COHEN, HEDGES, and TAFT.

**OPINION**

TAFT, Justice.

A jury convicted appellant of aggravated sexual assault of two children in a joint trial.

After appellant pled true to an enhancement paragraph alleging a prior conviction for attempted murder, the jury assessed punishment at 60 years in prison. We address (1) the trial court's denial of appellant's motion to suppress a letter he wrote, while in jail, to another inmate and (2) whether the trial court's error in allowing a surprise State's witness to testify, without giving appellant a continuance to prepare, was harmful. We affirm.

## Admission of Letter

In issue one, appellant claims the trial court erred in denying his motion to suppress a letter he wrote while in jail to another jailed inmate because its seizure violated the Texas Constitution.[1] *See* TEX. CONST. art. I, § 9.

■ While we view the historical facts in the light most favorable to the trial court's determination, whether those facts give rise to a reasonable expectation of privacy is a question of law reviewed de novo. *State v. Hardy*, 963 S.W.2d 516, 523 (Tex.Crim.App. 1997).

In a letter to his former jail cellmate Kevin Stephens, appellant wrote:

> You know what, my lawyer told me that the test from the girls came back negative for the sperm test. So the girls came up negative on that part. I found out something else, too. Don't you know that I can't not tell them the truth about what really happened, you know like what I told you. If I do they can use it against me to give me more case. So since they don't have no sperm, test which is good, I will have to go in there as I have not done anything [sic].

Harris County Sheriff's Deputy M.A. Stephens intercepted the incoming letter, read and copied it, delivered the copy to the prosecutor, and gave the letter to Kevin Stephens. The deputy opened the letter pursuant to jail policy allowing all nonprivileged inmate mail to be opened and examined for contraband, escape plans, and admission of felonies. The jail's mail policy, and the state regulation on which it was based, allow all nonprivileged inmate mail to be opened and read. *See* 37 TEX. ADMIN. CODE § 291.2(3)(C) (1998). The deputy testified that all inmates received an inmate handbook notifying them of the above rule.

■ To demonstrate standing, under the Texas Constitution, to challenge the letter's admission, appellant must show he had a legitimate expectation of privacy. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). That is, he had to prove (1) he had an actual, subjective privacy expectation and (2) society is prepared to recognize that expectation as reasonable. *Id.*

■ The trial judge could have concluded that appellant had no reasonable expectation of privacy because he had been warned of mail censorship in the inmate handbook. Moreover, numerous court cases have allowed prison mail to be censored. *See Turner v. Safley*, 482 U.S. 78, 91–93, 107 S.Ct. 2254, 2262–64, 96 L.Ed.2d 64 (1987); *Stroud v. U.S.*, 251 U.S. 15, 21–22, 40 S.Ct. 50, 52–53, 64 L.Ed. 103 (1919); *Salinas v. State*, 479 S.W.2d 913, 915 (Tex.Crim.App.1972) (no error in admitting drugs found in package sent between inmates); *cf. Ex parte Graves*, 853 S.W.2d 701, 705–06 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd) (holding no privacy expectation under wiretap statute when conversation recorded by visible speaker); *Thomas v. Allsip*, 836 S.W.2d 825, 828 (Tex. App.—Tyler 1992, no writ) (holding no invasion of privacy to read inmate's mail).

We overrule issue one.

## Testimony of Undesignated Witness

■ In issue two, appellant contends the trial court erred in allowing Kevin Stephens to testify because the State had not listed him as a witness. Alternatively, appellant claims the trial court erred in not granting a

---

1. The parties assume that TEX. CONST. amend. art. 1, § 9 and U.S. CONST. IV are coextensive. Appellant has not briefed whether the provisions' protections differ, and, with one exception, appellant cites only Fourth Amendment cases. Because the issue was not raised, we deem the two constitutional provisions coextensive for purposes of this opinion. *See Jones v. State*, 949 S.W.2d 509, 514 (Tex.App.—Fort Worth 1997, no pet.).

continuance to allow him to prepare for this testimony.

The morning trial began, appellant moved to suppress Kevin Stephens' testimony because the State had not listed him as a witness, as required by the trial court's discovery order. When the trial court overruled his objection, appellant moved for a continuance, which was also denied. The same day, Kevin Stephens testified that appellant admitted the crimes to him while they were cellmates.

The standard of review for the decision to allow an unlisted witness to testify and for denial of continuance is abuse of discretion. *Heiselbetz v. State,* 906 S.W.2d 500, 511 (Tex.Crim.App.1995) (continuance); *Stoker v. State,* 788 S.W.2d 1, 15 (Tex.Crim. App.1989) (unlisted witness).

Appellant's counsel knew of Stephens' letter, but claims he did not know of any confession to Stephens by appellant. The prosecutor said he had spoken to Kevin Stephens only that morning and then first learned of appellant's confession and decided to call this witness. The record shows, however, that the State received the letter at least 23 days before trial and that the prosecutor was assigned to the case four weeks before trial. The judge overruled the suppression motion, noting appellant had already known of Kevin Stephens' existence, his location, and the letter's content, and therefore, appellant could not be surprised by Stephens' testimony. We disagree.

Until the morning of trial, the State did not know appellant had confessed to Kevin Stephens. It did not decide to call Kevin Stephens until then. Nothing shows that appellant's counsel knew more than the State. If the State did not know these things until the morning of trial, appellant cannot be charged with such knowledge. The State's late preparation is no reason to make appellant begin trial unprepared on a first degree felony charge.

We hold the trial court abused its discretion in allowing the witness to testify without first allowing appellant some time to prepare.

## A. Which Standard of Harm Analysis?

To determine whether the trial court's error was reversible, however, we must apply rule 44.2 of the Texas Rules of Appellate Procedure. Tex.R.App. P. 44.2 (Reversible Error in Criminal Cases). This requires an initial determination of whether the error is "constitutional" or "other" error. While nearly any error can be said to somehow involve a constitutional right, the errors complained of in this point are: (1) allowing a surprise witness to testify; and (2) not granting a continuance to recover from the surprise. Neither of these errors is a violation of a constitutional provision. The former is a failure of the trial court to enforce its own order, while the latter is generally governed by statute. Therefore, we conclude that rule 44.2(b) (other error) should govern our harmless error analysis.

## B. Whose Burden?

Rule 44.2(a) (constitutional error) effectively places the burden on the State to show harmless error:

> If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment.

Tex.R.App. P. 44.2(a). While the rule does not expressly place a burden on any party, the "default" is to reverse unless harmlessness is shown. Thus, if neither party does anything, the case will be reversed. This requires the State to come forward with reasons why the appellate court should find the error harmless. *See Arnold v. State,* 786 S.W.2d 295, 298 (Tex.Crim.App.1990) (placing the burden on the State to show harmless error under former rule 81(b)(2), the predecessor to rule 44.2(a)).

Rule 44.2(b) is different: "Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." Tex.R.App. P. 44.2(b). If neither party does anything under rule 44.2(b), the error will be disregarded. The "default" is to disregard the error and affirm. The language

of rule 44.2(b) is very similar to the statutory provision for reviewing error in the jury charge:

> Whenever it appears by the record in any criminal action upon appeal that any requirement of Articles 36.14, 36.15, 36.16, 36.17 and 36.18 has been disregarded, the judgment shall not be reversed unless the error appearing from the record was calculated to injure the rights of defendant, or unless it appears from the record that the defendant has not had a fair and impartial trial. . . .

TEX.CODE CRIM. PROC. ANN. Art. 36.19 (Vernon 1981). This has been interpreted to place the burden on the defendant to show actual harm. *See Abdnor v. State,* 871 S.W.2d 726, 732 (Tex.Crim.App.1994).

■ Therefore, we conclude that the burden of showing harm under rule 44.2(b) (other error) is upon appellant. *Contra Umoja v. State,* 965 S.W.2d 3, 12 (Tex.App.—Fort Worth 1997, no pet.); *Fowler v. State,* 958 S.W.2d 853, 866 (Tex.App.—Waco 1997, pet. granted) (both holding the rule assigns no burden of proof to either party).

## C. Was Burden Met?

■ The harm raised by appellant is in denying defense counsel's opportunity to prepare to deal with the surprise witness.[2] Admittedly, counsel's cross-examination of the surprise witness was brief. There is nothing in the record, however, that shows counsel's cross-examination would have been any different after weeks of preparation. Neither is there anything in the record that shows appellant's trial strategy would have been different. To say that either would have been different is to engage in sheer speculation.

2. The dissenting opinion views the harm as the admission of the testimony of the surprise witness rather than as the denial of an opportunity to overcome the surprise.

3. Appellant's brief at 12.

1. *Nobles v. State,* 843 S.W.2d 503, 515 (Tex.Crim.App.1992); *Stoker v. State,* 788 S.W.2d 1, 15–16 (Tex.Crim.App.1989); *Pinkerton v. State,* 660 S.W.2d 58, 64 (Tex.Crim.App.1983).

Counsel for appellant concedes the record shows no harm: "Admittedly, the record does not reflect how the appellant was harmed by his attorney's lack of preparation time."[3] Therefore, appellant asks us to presume harm. It is clear, under these circumstances, that appellant has not met his burden of showing that his substantial rights were affected.

We overrule issue two.

## Conclusion

We affirm the judgments of the trial court.

COHEN, J., dissenting.

COHEN, Justice, dissenting.

I agree with the majority's decision overruling point of error one and also its decision on point two that the judge abused her discretion by allowing the witness to testify without first allowing some time to prepare. Unlike the majority, however, I would reverse for this error.

In most cases that affirmed judgments when a trial judge allowed an unlisted witness to testify, either (1) the judge offered or granted a recess for the defendant to interview the surprise witness before he testified,[1] (2) the witness did not testify the same day the State first revealed he would be called,[2] (3) the defendant knew the witness would give that particular testimony,[3] or (4) the defendant did not request or even declined a continuance or recess.[4] None of those things happened here.

The State does not argue that Kevin Stephens' testimony was harmless, and nothing suggests it was. The record suggests it was harmful. Appellant's entire cross-examination of Stephens consisted of the following:

2. *Nobles,* 843 S.W.2d at 515; *Hernandez v. State,* 819 S.W.2d 806, 816 (Tex.Crim.App.1991) (9 days); *Bridge v. State,* 726 S.W.2d 558, 567 (Tex.Crim.App.1986); *Pinkerton,* 660 S.W.2d at 64.

3. *Nobles,* 843 S.W.2d at 515; *Stoker,* 788 S.W.2d at 15; *Pinkerton,* 660 S.W.2d at 64.

4. *Nobles,* 843 S.W.2d at 515; *Hernandez,* 819 S.W.2d at 816; *Richardson v. State,* 744 S.W.2d 65, 77 (Tex.Crim.App.1987); *Bridge,* 726 S.W.2d at 566–67.

Defense counsel: Mr. Stephens, what are you in jail for? . . .

Stephens: Aggravated robbery.

Defense counsel: Did you say your case is set for trial?

Stephens: Yes, it is.

Defense counsel: Are you in the process of trying to work out a deal with the State? . . . Is the case set for trial?

Stephens: I have no idea. I imagine so, it is.

Defense counsel: Did you talk to your lawyer before you talked to [the prosecutor] today?

Stephens: No, I haven't.

Moreover, the significance of Kevin Stephens' testimony is apparent when considered in light of the other evidence. No physical evidence linked appellant to the crimes. No blood, DNA, semen, or other evidence of scientific testing was admitted. Although the complainants were promptly examined, the physician who testified for the State found one showed no bruising and no lacerations. The testimony of the complainants and that of Kevin Stephens was the only evidence that appellant committed a sex assault. Thus, the evidence was not so overwhelming as to render the error harmless.

In addition, the State emphasized the importance of the erroneously admitted evidence. It began its closing argument by discussing appellant's confession to Kevin Stephens. Thus, I believe that the error affected substantial rights. *See* TEX.R.APP. P. 44.2(b); *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App.1997) (holding a substantial right is affected when the error had a substantial and injurious affect or influence in determining the jury's verdict).

This conclusion is buttressed by the fact that if this were a civil case, reversal would undoubtedly be required, even though only money, not liberty, would be at stake. In *Sharp v. Broadway National Bank*, the Texas Supreme Court unanimously reversed an award of attorney's fees because the witness was not identified in response to interrogatories. 784 S.W.2d 669, 670 (Tex.1990). The Court did so even though (1) the witness was deposed before trial, (2) he was orally identi-

fied more than once before trial, and (3) the only issue at trial was attorney's fees. *Id.* at 671. None of these factors, even the admitted lack of surprise, was sufficient to show good cause for the unlisted witness to testify. *Id.* The sanction for failing to designate the known, deposed witness was "automatic exclusion" of his testimony. *Id.* The Court declared:

> The fact that a witness' identity is known to all parties is not itself good cause for failing to supplement discovery. *A party is entitled to prepare for trial assured that a witness will not be called because opposing counsel has not listed him or her in response to a proper interrogatory.*

*Id.* (emphasis added). I realize that the exclusion of testimony in civil cases is mandatory due to TEX.R. CIV. P. 215.5, and there is no such rule in criminal cases. Nevertheless, the contrast is too great to ignore, and it brings me to another reason this case should be reversed.

I have already analyzed all but one of the *Harris* factors, *i.e.*, the source of the error, the nature of the error, the error's likely effect on the jury, and the record as a whole. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex. Crim.App.1989). There remains the final factor, whether declaring the error harmless will encourage its repetition. *Id.* at 587. I believe it will. We have a rare opportunity here to encourage compliance with a trial judge's important pretrial discovery orders. I am not arguing for automatic exclusion of testimony, as in *Sharp*, nor for automatic reversal without harm. If this error were harmless, I would vote to affirm, and if appellant had had no reason to be surprised, I would also vote to affirm. Because appellant had more surprise and more harm than in *Sharp*, this case is much stronger for reversal. If this case is close on the issue of harm, then in my opinion, the final *Harris* factor pushes it over the edge. If we reverse, it will be noticed. It will encourage the State to comply with lawful orders. Everyone must do that, of course, but that is more than the State did here. It does not seem too much to ask.