Leon Joseph COMBS, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–98–00111–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 7, 1999.

Patrick McCann, Adam L. Moskowitz, Houston, for appellant.

Calvin Hartman, Houston, for appellee.

Panel consists of Justices SEARS, CANNON and LEE.*

## OPINION

ROSS A. SEARS, Justice (Assigned).

Leon Combs appeals from a conviction for delivery of a controlled substance, namely cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.112 (Vernon 1992). Appellant pleaded not guilty to the charge and the case was tried before a jury. Upon a finding of guilty, and true to an enhancement paragraph, the jury assessed punishment at two years confinement in a

* Senior Justice Ross A. Sears, Bill Cannon, and Norman R. Lee sitting by assignment.

state jail facility and a $3,000 fine. In two points of error, appellant complains that the trial court erred by refusing to hold a hearing outside the presence of the jury before determining whether the State's scientific evidence was relevant and reliable, and that the jury improperly reached a verdict without all jurors present. We affirm.

On August 13, 1997, Houston Police Officer John Spjut was working undercover on the 800 block of East 33rd, attempting to buy crack cocaine. While driving west down East 33rd, Spjut saw appellant and signaled to him. Appellant approached Spjut and asked him, "What are your looking for?" Spjut told appellant he wanted "a good 20," which is slang for a $20 piece of crack cocaine. Spjut gave appellant a $20 bill. Appellant left, and subsequently returned and handed Spjut .19 grams of cocaine.

■ In his first point of error, appellant argues that the trial court erred by refusing to hold a hearing outside the presence of the jury before determining whether the State's scientific evidence was relevant and reliable. Prior to the expert's testimony about tests performed on the cocaine, counsel for the appellant objected and claimed that a finding of relevancy must be made outside the presence of the jury before such testimony could be admissible. Appellant's objection was overruled. He was then forced to object to the expert's qualifications and the reliability and relevance of the testing procedures in front of the jury.

■ Under TEX.R.CRIM. EVID. 702,[1] the proponent of novel scientific evidence must prove to the trial court, by clear and convincing evidence that the proffered evidence is relevant and reliable. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App. 1992). In order for a court to consider evidence reliable, the proponent must satisfy three criteria: (1) the underlying scientific theory must be valid; (2) the technique applying the theory must be valid; and (3) the technique must have been properly applied on the occasion in question.[2] *Id.* at 573. However, these criteria "must be proven to the trial court, outside the presence of the jury, before the evidence may be admitted." TEX.R. EVID. 104 and 702; *Id.*

In our case, the State did not establish the *Kelly* criteria outside the jury's presence. Therefore, the trial court abused its discretion by failing to hold a hearing on the relevance and reliability of the State's scientific evidence when requested. *See Brown v. State*, 881 S.W.2d 582, 588 (Tex. App.-Corpus Christi 1994, no pet.); *Chisum v. State*, 988 S.W.2d 244, 249 (Tex. App.-Texarkana 1998, pet. ref'd). We must now determine whether the trial court's error resulted in harm to the appellant.

The State called Avelina DeJesus to testify about the tests she used to analyze the cocaine. DeJesus testified that she is a criminalist/chemist for the Houston Police Department's crime laboratory and has been for almost eleven years. Prior to her position with the police department, she worked as an analytical chemist for ten

---

1. The Texas Rules of Civil and Criminal Evidence were consolidated effective March 1, 1998. Former TEX. R. CRIM. EVID. 702 and new TEX. R. EVID. 702 are identical.

2. Factors that could affect a trial court's determination of reliability include, but are not limited to, the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such a community can be ascertained; (2) the qualifications of the expert(s) testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of the person(s) who applied the technique on the occasion in question. *Id.*

years. DeJesus also received a bachelor's degree in chemistry.

DeJesus testified that she can identify an unknown substance by performing a series of tests on the substance. In the present case, she performed a screening test, a microcrystalline test and a gas chromatography test. She stated that based on her analysis, the substance was cocaine. The State elicited no further testimony about the scientific basis of the tests or whether they were properly applied.

On cross-examination, DeJesus described the tests and the procedures used to analyze the cocaine. First, she explained that the screening test would determine the chemical makeup of a particular controlled substance. She applies a reagent to the substance yielding a different color reaction depending on the kind of substance. Officer Spjut performed a similar test in the field and testified that the substance was probably cocaine. Second, DeJesus described the theory involving the gas chromatography test and how the test yields differing retention times depending on a substances molecular weight. She claimed that the instrument used to perform the test was properly calibrated the day the test was performed. Third, DeJesus discussed the microcrystalline test. She stated that she would take a sample and find a different reagent. Then, she would look at the substance under a microscope to see if it matched a specific crystal. DeJesus testified after performing all of these test, she determined the substance was cocaine.

■ In addition to DeJesus's testimony, we may consider prior judicial opinions allowing admission of evidence in determining whether the underlying theory of scientific evidence is valid. *See Emerson v. State*, 880 S.W.2d 759, 767–768 (Tex.Crim.App.1994); *Jones v. State*, 716 S.W.2d 142, 147 (Tex.App.-Austin 1986, pet. ref'd). Such evidence may be considered for the first time on appeal. *Emerson*, 880 S.W.2d at 765. Texas and Federal courts have found the gas chromatography test to be a reliable method for identifying compounds, and it has been generally acceptance in the scientific community. *See Wright v. State*, 853 S.W.2d 154, 155 (Tex.App.-Corpus Christi 1993, pet. ref'd); *Jones*, 716 S.W.2d at 145–152; *United States v. Bynum*, 3 F.3d 769, 772 (4 th Cir.1993).

DeJesus's testimony concerning her qualifications was sufficient to show that she had the ability and knowledge necessary to conduct her analysis. She explained the nature of the test performed with reasonable clarity and explained her training and experience. Based upon her testimony and the case law from other jurisdictions, we hold that the State made a sufficient showing that the evidence was based on a valid scientific theory, that the technique DeJesus used was valid, and she had the expertise to properly apply it and did so on that occasion.

The error complained of is not a constitutional error, so we apply Tex.R.App. P. 44.2(b). *See Chisum*, 988 S.W.2d at 251; *Fowler v. State*, 958 S.W.2d 853, 860 (Tex. App.-Waco 1997, pet. granted). The defendant has the burden under Tex.R.App. P. 44.2(b) of showing some substantial right has been affected by the error. *See Merritt v. State*, 982 S.W.2d 634, 637 (Tex. App.-Houston [1st Dist.] 1998, pet. ref'd). In his brief, appellant does not claim that he suffered any harm, but only argues that the case must be reversed because the State did not satisfy the admissibility requirements for the scientific evidence. Without a showing of any infringement of his substantial rights, we must disregard the error. Moreover, even though the evidence was admitted in the jury's presence, it would have ultimately been placed before the jury. We overrule appellant's first point of error.

■ In his second point of error, appellant complains that the jury improperly reached a verdict without all members present. We disagree.

Shortly after the jury retired to deliberate punishment, the bailiff informed the court that the foreperson of the jury chocked on food. He was resuscitated and taken to the hospital. When the trial judge was informed of the foreperson's condition, he informed both the State and appellant. The judge then said that the remaining jurors were in the jury room and that they had "rung twice, which would seem to indicate that they have a verdict." At that point, appellant's counsel objected on the basis that it was improper for the jury to deliberate without the twelfth juror, and asked for a mistrial. The trial court took appellant's objection under advisement and recessed the trial until the following day. The next morning, all twelve jurors reached an unanimous verdict of guilty.

On appeal, appellant does not complain of the jury deliberating without the foreperson. Instead, he argues that the jury reached a verdict without all jurors present. See TEX.CODE CRIM. PROC. ANN. art. 36.29(a). Appellant offered no evidence to show that the eleven remaining jurors reached a verdict or deliberated while the foreperson was in the hospital. We overrule appellant's second point of error.