

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0230-24

---

### CHAMPAGNE SMITH, Appellant

### v.

### THE STATE OF TEXAS

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FOURTEENTH COURT OF APPEALS
### HARRIS COUNTY

---

WALKER, J., DELIVERED THE OPINION OF THE COURT IN
WHICH RICHARDSON, NEWELL, KEEL, AND FINLEY, JJ., JOINED,
AND IN WHICH PARKER, J., JOINED EXCEPT AS TO PARTS III(B)(3),
III(B)(4), AND IV(B). SCHENCK, P.J., FILED A DISSENTING
OPINION IN WHICH YEARY AND MCCLURE, JJ., JOINED.

## O P I N I O N

This case addresses two issues. First, whether the trial court's masking policy

violated the Confrontation Clause. Second, whether the Fourteenth Court of Appeals erroneously presumed harm when the State failed to substantively address the issue of harm in its brief. While the court of appeals was correct in finding that the trial court's masking policy violated the defendant's constitutional rights, the court of appeals erred in applying a rule of default on the question of harmlessness. We reverse the judgment of the Fourteenth Court of Appeals, and we remand the matter back to that court to consider harmlessness in the first instance.

## I — Facts

Appellant, Champagne Smith, was indicted for a second-degree felony offense of aggravated assault. During Appellant's 2023 trial, the trial court required all persons to wear surgical masks throughout court proceedings, including voir dire and all witness testimony, except when necessary for in-court identification. Prior to voir dire, Appellant's trial counsel objected to the court's mask policy on Sixth Amendment grounds, arguing that witness credibility could not be assessed.[1] The

---

[1]

> MR. RAY: At this time we just respectfully – we understand the Court's mask policy, which requires us to wear the mask during the jury selection and during the trial, except when there's any sort of in-court identifications. We would just object under the . . . 6th . . . Amendment[.]
>
>  . . .

State offered no response to the objection, and the trial court overruled it. As required by the trial court's policies, the only two first-hand witnesses to the assault wore surgical COVID masks during their testimony. Appellant was convicted of aggravated assault.

## II — Procedural History

On appeal, the Fourteenth Court of Appeals reversed and remanded Appellant's conviction because her constitutional right to confrontation was violated by the trial court's mask mandate. *Smith v. State*, 693 S.W.3d 781, 784 (Tex. App.—Houston [14th Dist.] 2024). The court of appeals noted that concealing a witness's facial features affects the fact finder's capability to assess demeanor. *Id.* at 789 (citing *Romero v. State*, 173 S.W.3d 502, 505–06 (Tex. Crim. App. 2005)).

Next, considering whether the Confrontation Clause violation was harmless error, the court of appeals emphasized that the "State has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt." *Id.* at

---

[D]uring live witness testimony, defense counsel . . . believes after during numerous jury trials, that to fully determine the credibility of the witnesses, a jury would want to see things such as smirks, pouting, things that their facial gestures could show and could show – put the emphasis of the way the statement or testimony is supposed to be delivered. Again, the masks would hinder that.

So just under those blanket constitutional protections, we would just object to wearing a mask, specifically having the witnesses do so[.]

794 (citing *Deck v. Missouri*, 544 U.S. 622, 635 (2005); and *Haggard v. State*, 612 S.W.3d 318, 328 (Tex. Crim. App. 2020)).

> When the State does not attempt [to show that the error was harmless] in its brief, the "default" is to reverse the judgment. *See* [*Merritt v. State*, 982 S.W.2d 634, 636 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd)]; *Romero*, 173 S.W.3d at 506–07 (state failed to show constitutional error was harmless beyond reasonable doubt); *Lamb v. State*, 603 S.W.3d 152, 162 (Tex. App.—Texarkana 2020, no pet.) (declining to independently conduct harm assessment of constitutional error when state failed to brief harm issue)).

*Id.* at 794. Therefore, because Appellant argued in her brief that the witness masking requirement constituted harmful error, and the State did not substantively address the issue of harm in its brief, the court of appeals reversed the judgment.

## III — Issue 1: The Trial Court's Masking Policy Violated the Confrontation Clause

### III(a) — The Right to Confrontation

Any person accused of a crime has a fundamental right to confront their accusers. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10. "[T]he Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988). The right to confrontation is paramount as it (1) includes a "personal examination" of the witness; (2) "insures that the witness will give his statements under oath—thus

impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury;" (3) "forces the witness to submit to cross-examination, the 'greatest legal engine ever invented for the discovery of truth';" and (4) "permits the jury that is to decide the defendant's fate to *observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility*." *Maryland v. Craig*, 497 U.S. 836, 845–46 (1990) (emphasis added) (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). The right to confrontation has been required not only for "testing the recollection and sifting the conscience of the witness, but [also for] compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." *Mattox v. United States*, 156 U.S. 237, 242–43 (1895).

The face-to-face confrontation requirement should not be "easily dispensed with[,]" despite it not being absolute. *Craig*, 497 U.S. at 850. It may only be minimally abridged when "necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." *Id.*; *Coy*, 487 U.S. at 1021. Further, the trial court must hear evidence to make a case-specific finding of necessity of the deprivation. *Craig*, 497 U.S. at 855.

### III(b)—Application

The lower court correctly applied *Romero v. State* in finding that Appellant's Confrontation Clause rights were violated by the trial court's mask mandate.

### III(b)(1) — *Romero*

In *Romero*, the appellant was indicted for aggravated assault. *Romero*, 173 S.W.3d at 503. During trial, one of the State's key witnesses refused to testify without wearing a "disguise" consisting of "dark sunglasses, a baseball cap pulled down over his forehead, and a long-sleeved jacket with its collar turned up and fastened so as to obscure [his] mouth, jaw, and the lower half of his nose." *Id.* This Court noted that "the presence requirement is motivated by the idea that a witness cannot 'hide behind the shadow' but will be compelled to 'look [the defendant] in the eye' while giving accusatory testimony." *Id.* at 505 (quoting *Coy*, 487 U.S. at 1018) (alteration in original).

Although in *Craig*, 497 U.S. at 851, the Supreme Court determined that the testimony of a child through a one-way closed-circuit monitor was reliable even though the physical presence element was lacking, the facts in *Craig* are not analogous to *Romero*. "[U]nlike *Craig*, [*Romero*] also involve[d] a failure to respect a *second* element of confrontation: observation of the witness's demeanor." *Romero*,

173 S.W.3d at 505 (emphasis in original). When more than two elements of confrontation are being compromised, this Court determined that the Confrontation Clause requirements can only be circumvented if the public policy interest being served is "truly compelling." *Id.* at 506. We did not find the witness's fears compelling, noting differences between adults' fears and children's fears and the fact that the defendant already knew the witness's name and address. *Id.*

### III(b)(2) — Applying *Romero* to the Facts at Hand

The Confrontation Clause requires case-specific evidence showing an encroachment of the defendant's right to confrontation was necessary to further a public-policy interest for the encroachment to be allowed under the United States Constitution. *Craig*, 497 U.S. at 855. Because a surgical mask affects the physical-presence element of the Confrontation Clause and the jury's ability to assess demeanor, the trial court was required to make case-specific showings of fact that the mask mandate was necessary to further a public-policy interest. *Romero* applied this same principle when it reversed a conviction where a single witness had covered his eyes, nose, and mouth and there was no important, let alone compelling, public-policy interest to justify the covering. *Romero*, 173 S.W.3d at 506. Therefore, the use of surgical masks in the case at bar—which is a significant impediment to viewing

facial expressions due to the coverage of both the nose and mouth—is like *Romero*. A reversal of the conviction is warranted because (1) the trial court did not show case-specific evidence that the masks were necessary, and (2) the mask mandate was applied regardless of individual necessity.

The court of appeals did not misread *Romero* when applying it to the case at hand. We agree that wearing a surgical mask would make *more than just a slight impact* on a juror's ability to assess a witness's demeanor. Further, here, the trial court made no individualized findings on whether the masks were necessary to further a public policy goal. *See Craig*, 497 U.S. at 845.

### III(b)(3) — The Case at Hand is Most Analogous to *Finley*

In *Finley*, the trial court allowed a witness to wear a surgical mask without making case-specific findings that it was necessary to further a public-policy interest. *Finley v. State*, 707 S.W.3d 320, 325–26 (Tex. Crim. App. 2024) (plurality op.). However, the court of appeals and this Court stated that the witness was not entitled to "to wear a mask while testifying[,]" even though the witness "had specialized knowledge about the need to wear a mask" during COVID and that the witness "was a crime victim under . . . the Texas Constitution [and] was entitled to be treated fairly," *Id.* at 328. When affirming the reversal of the conviction in *Finley*, this

Court's plurality opinion relied heavily on three cases: *Coy*, *Romero*, and *Haggard*.

First, this Court emphasized that in *Coy*, the United States Supreme Court deemed a screen that "allowed the accused only 'dimly to perceive the witnesses, but the witnesses to see him not at all'" as being "'difficult to imagine a more obvious or damaging violation of the defendant's right to face-to-face encounter.'" *Id.* at 330 (discussing *Coy*, 487 U.S. at 1015, 1020). Second, relying on *Romero*, this court highlighted that a juror's ability to "observe" not just the eyes, but also "facial expressions[,]" is of great importance. *Id.* (discussing *Romero*, 173 S.W.3d at 505). Third, the Court stated that where the Confrontation Clause is implicated, "there must be individualized findings by the trial court regarding the witness in question as to why the special procedure was necessary." *Id.* (citing *Haggard*, 612 S.W.3d at 324).

### III(b)(4) — Applying *Finley* to the Facts at Hand

Appellant's case is analogous to *Finley*. Moreover, the Appellant's Sixth Amendment right to confrontation is more egregiously violated than the defendant's rights in Finley for the following reasons: (1) in *Finley*, only one witness was wearing a mask whereas here, every witness was; (2) in *Finley*, the witness made an individual choice to wear a mask whereas here, the issue is a mask mandate that

applied regardless of necessity; (3) in *Finley*, the trial court submitted findings of facts (which failed to show necessity) whereas here, no findings were made at all; and (4) the trial in *Finley* occurred in 2021 whereas here, the trial took place in January of 2023, after face masks were no longer required by the Supreme Court of Texas and after the Governor had issued an executive order prohibiting mask requirements.[2] *Finley*, 707 S.W.3d at 322–24. Consequently, the Sixth Amendment

---

2  The court of appeals thoroughly recounted how the situation changed from the initial COVID-19 precautions to the time of Appellant's 2023 trial:

> In March 2020, the Governor declared a state of disaster for all Texas counties due to COVID-19. *See* The Governor of the State of Tex., Proclamation No. 41-3720, 45 Tex. Reg. 2087, 2095 (2020). Beginning March 13, 2020, the Supreme Court of Texas issued a series of emergency orders requiring all Texas courts to take certain precautions in both civil and criminal trials to avoid risk to court staff, parties, attorneys, jurors, and the public. *See* First Emergency Order Regarding the COVID-19 State of Disaster, 596 S.W.3d 265 (Tex. 2020). For several months, the supreme court emergency orders, subject only to constitutional limitations, prohibited courts from conducting in-person proceedings, including in-person jury proceedings, that were inconsistent with the latest guidance by the Office of Court Administration ("OCA"). *See, e.g.*, Twenty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, 609 S.W.3d 135, 136–37 (Tex. 2020). Before in-person jury trials could be held, the OCA required that the county local administrative judge submit an operating plan, which was to mandate face coverings be worn by all persons at all times during trials. *See* OCA, Guidance for All Court Proceedings During COVID 19 Pandemic, pp. 5–7 (effective October 1, 2020; updated December 31, 2020), https://www.txcourts.gov/media/1450221/guidance-for-all-court-proceedings-during-covid-19-pandemic.pdf.
>
> In response to a request from the Harris County Attorney, the Texas Attorney General issued an August 3, 2020 opinion stating that judges could require individuals in courtrooms to wear facial coverings if necessary to maintain order and safety. *See* Tex. Att'y Gen. Op. No. KP-0322, at *3–4 (2020). Consistent with the Attorney General's opinion, and pursuant to the OCA Guidance, the Harris

11

County Local Administrative Judge submitted an operating plan along with a jury proceeding addendum, effective October 1, 2020. *See* Jury Proceeding Addendum to COVID-19 Operating Plan for the Harris County Judiciary 5 (eff. on and after Oct. 1, 2020), https://www.txcourts.gov/media/1450784/harris-county-jury-trial-plan.pdf. The plan required that all persons in a courtroom wear facial coverings during jury trial proceedings, from jury qualification through the end of trial. *Id.* The operating plan was re-adopted continuously until the requirements expired on August 1, 2022. *See* Sixth Re-Adoption of the COVID-19 Operating Plan for the Harris County Judiciary District Courts, County Courts at Law & Probate Courts (June 1, 2022) (on file with the Fourteenth Court of Appeals).

In addition to the operating plan in Harris County, subsequent supreme court emergency orders applicable to all counties permitted district courts to conduct in-person proceedings if the local administrative judge adopted minimum standard health protocols that included masking, social distancing, or both. *See* Thirty-Sixth Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 897, 898 (Tex. 2021) (requiring face coverings to be worn over the nose and mouth); Thirty-Eighth Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 900, 901 (Tex. 2021). The language requiring masking was removed from the supreme court's emergency orders beginning in August 2021. See Fortieth Emergency Order Regarding the COVID-19 State of Disaster, 629 S.W.3d 911 (Tex. 2021).

Thus, supreme court orders, OCA guidance, and a local operating plan that previously supported courtroom masking requirements in Harris County district courts had terminated months before the January 2023 trial in this case.

Meanwhile, the Governor issued an executive order on July 29, 2021 providing that "no government official may require any person to wear a face covering or to mandate that another person wear a face covering." *See* The Governor of the State of Tex., Exec. Order GA-38 (issued July 29, 2021), 46 Tex. Reg. 4913, 4914–15 (2021). GA-38 stated that it would supersede any face-covering requirement imposed by any local government entity or official, subject to certain exceptions. *See id.* at 4. Harris County Judge Lina Hidalgo issued a contradicting directive on August 17, 2021, which granted Harris County district courts discretion to require masking in courtrooms. *See* Harris Cty. Judge Lina Hidalgo, Eighth Order Authorizing Fever & Health Screening & Face Coverings in County Buildings (issued Aug. 17, 2021), available at https://agenda.harriscountytx.gov/2021/20210812Order1.pdf. The county simultaneously sued the Governor to enjoin GA-38. *See Abbott v. Harris County*, 672 S.W.3d 1, 6–7 (Tex. 2023). A Travis County district court denied the state's plea

was violated here as it was in *Finley*. *Id.* at 322.

### IV — Issue 2: The Lower Court Improperly Applied a Rule of Procedural Default in Finding No Showing of Harmlessness When the State Did Not Substantively Address the Issue of Harm in its Brief

### IV(a) — Constitutional Errors Shall be Reversed, Unless the Court Determines that the Error was Harmless Beyond a Reasonable Doubt

When a trial court denies a defendant of physical, face-to-face confrontation, the onus is on the court of appeals to review this denial for harmless error. *Coy*, 487 U.S. at 1021. "We review constitutional error in the admission of testimonial statements in violation of the Confrontation Clause under the standard specified in Rule 44.2(a) of the Texas Rules of Appellate Procedure." *Allison v. State*, 666

---

to the jurisdiction and granted a temporary injunction prohibiting the Governor and the Attorney General from enforcing GA-38 in Harris County. *Id.* at 7. The Third Court of Appeals affirmed the injunction. *Abbott v. Harris County*, 641 S.W.3d 514, 530 (Tex. App.—Austin 2022), rev'd, *Abbott*, 672 S.W.3d 1. The supreme court granted review and reversed. *Abbott*, 672 S.W.3d at 21. The court held that GA-38, issued pursuant to the Texas Disaster Act, carried the force of law and superseded any contrary orders of local officials, including Judge Hidalgo's order. *See id.* at 12, 19. Though the supreme court did not decide the matter until June 30, 2023, GA-38 remained effective during the state's appeal because the trial court's injunction was automatically stayed. *Abbott*, 672 S.W.3d at 7 (citing Tex. R. App. P. 29.1(b)); Tex. Civ. Prac. & Rem. Code § 6.001 (state exempt from bond requirements in civil appeal); *see In re State Bd. for Educator Certification*, 452 S.W.3d 802, 804–07 (Tex. 2014). GA-38 expired in June 2023. *Abbott*, 672 S.W.3d at 9 n.23. Under these circumstances, County Judge Hidalgo's order could not have supported a witness masking requirement in a January 2023 jury trial.

*Smith*, 693 S.W.3d at 790–92.

S.W.3d 750, 763 (Tex. Crim. App. 2023). Under Rule 44.2(a), constitutional error must be reversed unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction. TEX. R. APP. P. 44.2(a).

In *Chapman v. California*, the Supreme Court of the United States held that "before a federal constitutional error can be held harmless, the court must be able to declare a belief that [the error] was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 23 (1967). Additionally, the Supreme Court recognized that when a constitutional error is found by an appellate court, the harmless-error standard places "the risk of doubt on the State," *O'Neal v. McAninch*, 513 U.S. 432, 439 (1995), and that the State has the burden of proving that the trial court's error was harmless. *See Deck v. Missouri*, 544 U.S. 622, 635 (2005); *Haggard*, 612 S.W.3d at 328.

On the other hand, while the State has the burden to show a constitutional error is harmless, an appellee, such as the State in this case "is not required to file a brief[.]" *Spielbauer v. State*, 622 S.W.3d 314, 318 (Tex. Crim. App. 2021) (citing *Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007); TEX. R. APP. P. 38.8.).

**IV(b) — A Reviewing Court Has an Independent Duty to Consider Harmlessness, Even When the State Fails Its Own Obligation Under *Chapman***

Because the State, as Appellee, was not required to file a brief, the State argues

that the Court of Appeals erred by finding harm from the State's decision not to brief the issue of harmlessness.

The State alleges that the Fourteenth Court misread the U.S. Supreme Court's decision in *Chapman* presuming harm when the State fails to brief the issue of harm. The State argues both cannot be true—that appellate courts have a duty to conduct a review for harmless error in the absence of an appellee's brief while simultaneously an appellee's failure to address harmlessness in a submitted brief would result in a "default" win for the appellant. We agree. An appellee's "failure to file a brief would not relieve the appellate court of its duty to thoroughly review the appellant's claims and any 'subsidiary issues that might result in upholding the trial court's judgment.'" *Spielbauer*, 622 S.W.3d at 318–19 (quoting *Volosen*, 227 S.W.3d at 80).

Furthermore, an appellate court does indeed have a duty to review for harm, both when the error is non-constitutional, *Johnson v. State*, 43 S.W.3d 1, 5 (Tex. Crim. App. 2001), and when the error is constitutional. Under *Chapman*, "before a constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24. In other words, an appellate court must "determine, beyond a reasonable doubt, that the

error did not contribute to the conviction or punishment" before the court of appeals can find harmless error. TEX. R. APP. P. 44.2(a). Whichever way you put it, the court must determine whether a constitutional error was or was not harmless. Consequently, we hold that, regardless of whether the State abides by its own duty under *Chapman* to show that a constitutional error was harmless, a court of appeals must follow its own obligation under *Chapman* to determine whether a constitutional error was harmless.

To be clear, our opinion today cannot and should not be read as absolving the State of its own burden under *Chapman*. Indeed, it would be anomalous to say that the court of appeals erred by disregarding its role under *Chapman* while at the same time saying that the State can ignore its own role under *Chapman*. The Supreme Court has repeatedly emphasized the State's obligation:

> Certainly error, constitutional error . . . casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in *Fahy v. State of Connecticut* [375 U.S. 85, 86–87 (1963)] about 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold,

as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Chapman*, 386 U.S. at 24. The Supreme Court's focus on the State's burden to show that a constitutional error was harmless was not a flash-in-the-pan that stopped at *Chapman*. Twenty years later, in *Satterwhite*, the Supreme Court included the State's burden in its explanation of the *Chapman* harmless error rule:

> Our conclusion does not end the inquiry because not all constitutional violations amount to reversible error. We generally have held that if the prosecution can prove beyond a reasonable doubt that a constitutional error did not contribute to the verdict, the error is harmless and the verdict may stand.

*Satterwhite v. Texas*, 486 U.S. 249, 256 (1988). Nearly twenty years after *Satterwhite*, the story remained the same in *Deck*, when the Supreme Court reversed a death sentence for the use of visible shackles during the penalty phase:

> The State must prove "beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained."

*Deck*, 544 U.S. at 635. And just recently, the Supreme Court again explained:

> *Chapman* merely announced the default burden of proof for evaluating constitutional errors on direct appeal: The prosecution must prove harmlessness beyond a reasonable doubt.

*Brown v. Davenport*, 596 U.S. 118, 144 (2022).

This Court in turn has repeatedly reaffirmed that the State has the burden

under *Chapman. See, e.g.*, *Arnold v. State*, 786 S.W.2d 295, 298 (Tex. Crim. App. 1990) (under the former Rule 81(b)(2), "as beneficiary of the error the State has the burden to show beyond a reasonable doubt that the error did not contribute to the verdict on punishment"); *Williams v. State*, 958 S.W.2d 186, 196 n.10 (Tex. Crim. App. 1997) ("the newly promulgated harmless error rule [Rule 44.2(a)] is identical to the previous Rule of Appellate Procedure 81(b)(2). Under this rule, the burden is on the State to prove that the error made no contribution to the defendant's conviction or punishment."); *Wall v. State*, 184 S.W.3d 730, 746 n.53 (Tex. Crim. App. 2006) (quoting *Chapman* and explaining that, "in addressing whether constitutional error is harmless, the critical inquiry is whether the error may have contributed to appellant's conviction or punishment; the standard of review 'requir[es] the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained'"); *Wells v. State*, 611 S.W.3d 396, 411 (Tex. Crim. App. 2020) ("The State, as the beneficiary of the error, has the burden of proving that the constitutional error was harmless beyond a reasonable doubt."); *Haggard*, 612 S.W.3d at 328 ("Constitutional error is harmful unless a reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction. . . . The State

has the burden, as beneficiary of the error, to prove that the error is harmless beyond a reasonable doubt.").

## V — Conclusion

In conclusion, the court of appeals correctly found that the trial court's policy requiring witnesses to wear face coverings during Appellant's trial violated his right to confront the witnesses against him under the Sixth Amendment of the United States Constitution. However, the court of appeals mistakenly applied a rule of "default" when it reversed the trial court's judgment because the State failed to make an argument in its brief as to why the constitutional violation was harmless beyond a reasonable doubt. We hold that the court of appeals had an independent duty to determine harmlessness, regardless of whether the State briefed it.

We reverse and remand to the court of appeals to determine, under *Chapman* and Rule 44.2(a), whether the violation of Appellant's rights under the Confrontation Clause was harmless.


Delivered: November 20, 2025
Publish