# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00401-CR
NO. 03-03-00402-CR
NO. 03-03-00403-CR

**Saul Hurtado, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NOS. 3020967, 9020998 & 9020999, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following a serious car accident in which a child was killed and several other people were injured, appellant Saul Hurtado was indicted for manslaughter and three counts of aggravated assault with a deadly weapon. The cases were consolidated for trial, and a jury convicted appellant of the lesser-included offense of criminally negligent homicide and two of the aggravated assaults. The trial court sentenced appellant to five years' imprisonment for each offense, with the sentences running concurrently, and made affirmative findings of use of a deadly weapon in each offense. Appellant raises four points of error, arguing that the trial court erred in admitting scientific evidence without requiring the State to establish its reliability, the evidence is legally and factually insufficient to support the convictions, and the evidence is legally insufficient to prove the deadly weapon findings. We affirm the convictions.

**Admission of Evidence**

In his first point of error, appellant contends that the trial court erred in admitting scientific evidence that he argues was not shown to be reliable. The evidence of which he complains is the result of a gas chromatography test performed on a blood sample taken from appellant after the accident, which showed his blood had a 0.04 alcohol concentration.[1] Appellant complains that the court erred by admitting the evidence "without requiring the [State] to establish its reliability."

Expert testimony may be admitted under rule 702 of the rules of evidence[2] if the trial court determines the evidence is reliable. *Kelly v. State*, 824 S.W.2d 568, 572-73 (Tex. Crim. App. 1992). To be considered reliable, scientific evidence must satisfy three criteria: "(a) the underlying scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the technique must have been properly applied on the occasion in question." *Id*. at 573. However, "[t]rial courts are not required to re-invent the scientific wheel in every trial." *Hernandez v. State*, 116 S.W.3d 26, 29 (Tex. Crim. App. 2003). Once a scientific principle, theory, or methodology has been accepted by the professional community and the trial courts, other courts may take judicial notice of the validity of that theory. *Id*. The transportation code provides that in a prosecution such as this, evidence of a person's alcohol concentration is admissible if shown by the analysis of blood taken at the request of a peace officer and in a sanitary place by a qualified medical professional. *Garcia v. State*, 112 S.W.3d 839, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (citing Tex. Transp. Code Ann. §§ 724.017(a), .064 (West 1999)).

---

[1] A person is legally intoxicated if he has an alcohol concentration of 0.08 or more. Tex. Pen. Code Ann. § 49.01(2)(B) (West 2003).

[2] Rule 702 provides for the admission of expert testimony. Tex. R. Evid. 702.

A trial court's determination on the admissibility of evidence is reviewed for an abuse of discretion. *Montgomery v. State*, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). When there are multiple possible grounds that can be summarized under one general objection and "it seems from context that [the objecting] party failed effectively to communicate his desire, then reviewing courts should not hesitate to hold that appellate complaints arising from the event have been lost." *Meyers v. State*, 865 S.W.2d 523, 524-25 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (to preserve error, defendant must make timely and specific objection, which "allow[s] the trial court the opportunity to make a determination on the objection and then to proceed with the trial under the proper procedural and substantive manners, as appropriately corrected by the trial court"; appellate complaint "that does not comport with the trial objection presents nothing for review").

Glenn Harbison, chemist with the Austin Police Department, testified that he performed a gas chromatography test and that the test "has been around since the 40's and 50's. It's been a pretty standardized workhorse in the chemistry field." Appellant objected that the State's prosecutor had "not laid the proper predicate" for the testimony, stating:

> She [the prosecutor] needs to show under a 702 standard—702, Rules of Evidence, the reliability—besides the relevance she needs to show also it's reliable evidence, and she hasn't gone through any of the factors under [*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,[3]] . . . or *Kelly v. State*[4]. . . . There are certain standards that she has to establish scientifically to show reliability of this evidence before it's admissible.

---

[3] 509 U.S. 579 (1993).

[4] 824 S.W.2d 568 (Tex. Crim. App. 1992).

3

The trial court responded that "evidence on this piece of instrumentation has been accepted for eons and is so firmly established that there's no need to engage in further time expenditure" and overruled the objection. On cross-examination, appellant asked whether appellant's blood alcohol level reached the standard of legal intoxication. Harbison answered that it did not, and appellant concluded his questioning.

Appellant is correct that the State did not present evidence of the conditions under which appellant's blood sample was tested. However, in his objection, appellant referred to the *Daubert/Kelly* factors, which address the reliability of a theory, and rule 702, arguing that the scientific reliability of the test had not been established. Appellant's objection attacked the underlying methodology of the gas chromatography test, rather than questioning the conditions under which the test was performed. When the trial court overruled the objection, making it clear that it understood appellant to be objecting to the theory underlying the test as opposed to this particular test, appellant did not clarify his objection or object further.[5] On cross-examination, appellant did not raise any questions or concerns about the test conditions, Harbison's experience with or knowledge about the test, or the machine's performance. *See Kelly*, 824 S.W.2d at 573. By failing to clarify or object further, appellant waived his specific objection to the reliability of this particular test.[6] *See Meyers*, 865 S.W.2d at 525. We overrule appellant's first point of error.

---

[5] The trial court was correct in its ruling that the gas chromatography test has been proven reliable. *See Combs v. State*, 6 S.W.3d 319, 322 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (discussing reliability of gas chromatography test in identifying substances). *Cf. Hernandez v. State*, 116 S.W.3d 26, 30 (Tex. Crim. App. 2003) (no evidence to show machine's scientific reliability).

[6] Appellant's complaint is somewhat ambiguous even on appeal—he states that his complaint is not about the underlying scientific theory but the "reliability of the testing performed on appellant's blood," but goes on to say that the trial court did not require the State "to establish the

4

## Sufficiency of the Evidence

In his second and third points of error, appellant argues that the evidence is legally and factually insufficient to support his conviction. In his second point, he contends that the jury charge did not require the jury to find that his vehicle struck the vehicle in which the victims were passengers and that the "manner and means of committing the offense as found by the jury were not shown to have caused" the victims' injuries. In his third point, appellant argues that the other driver's conduct was a concurrent cause of the accident that "was sufficient to produce the victims' resulting injuries" and that appellant's conduct was insufficient to cause the accident.

### *Factual Summary*

On the evening of May 12, 2002, Pedro Jaimes ("Jaimes") left his sister's house, driving his children, Nelsi, who was almost two years' old, and Pedrito, another sister named Maria Jaimes, who was three months pregnant, her husband, and their son. Jaimes testified that he had driven along the same two-lane road many times in the past; the lanes are divided by double yellow lines, indicating a no-passing zone. There is very little shoulder and a steep grade to a drainage ditch on either side. Maria and Jaimes testified that Jaimes stopped to wait to make a left turn, and appellant, who was driving the car behind them, started honking and acting as if he was going to try to pass. Jaimes decided not to turn because of oncoming traffic and instead decided to drive ahead to a point where the road widens into four lanes. He accelerated from a stop, trying to get back up to the speed limit. Appellant then pulled into the left lane to pass Jaimes; Jaimes said that at that

---

reliability of the scientific testing at issue," citing to *Daubert*, *Kelly*, and *Hernandez*, which address how an underlying scientific theory or piece of scientific testing equipment is to be shown reliable.

point, he was no longer accelerating, but was probably driving about thirty-five miles per hour. As appellant tried to pass, a van approached from the opposite direction, and in an attempt to avoid a head-on collision, appellant moved back into the right lane, trying to get ahead of Jaimes's truck. Appellant's car struck Jaimes's truck, and both vehicles ran off the road and into a ditch. Maria miscarried her baby and suffered injuries to her head, heart, ribs, and back; her husband suffered head and back injuries; and Jaimes suffered a broken shoulder. Nelsi, who was not in a child seat or otherwise restrained in the truck, died as a result of her injuries. The medical examiner testified that Nelsi might have survived the accident if she had been properly restrained.

Maria could not remember whether Jaimes was accelerating as appellant tried to pass. Jaimes did not recall that he slowed or braked when he noticed appellant trying to pass just before the accident, nor did he know how fast appellant was going, but he said appellant passed him quickly. Jaimes was not familiar with the transportation code provision that requires a driver to maintain or reduce speed when being passed by another car. *See* Tex. Transp. Code Ann. § 545.053(b)(2) (West 1999). Asked whether he could have moved over to allow the car to pass, he said, "I don't know. Maybe. I don't know. Everything went so fast. I don't know. I was just trying to stay in my lane." He testified that he usually had a baby seat for Nelsi, but he had removed it so all of his passengers could fit. Jaimes denied being angry, racing, or playing games with appellant and said he was not accelerating to stop appellant from passing, but was simply trying to maintain his lane. Asked whether Jaimes could have slowed and allowed appellant to pass, Maria said, "But he wouldn't go past. . . . It's almost like he was playing at like, and that's what we thought about afterwards. How come he didn't just go?"

6

A police officer testified that a witness to the accident said it looked like the two vehicles had been drag racing. Detective Mark Breckenridge did a partial reconstruction of the accident and determined that Jaimes hit his brakes shortly before the collision. He concluded that appellant's car was traveling almost sixty miles per hour and that Jaimes was driving between forty-five and sixty miles per hour; the speed limit is thirty-five miles per hour. Breckenridge testified, "Speed might have played a minor role in this one, but the major role was the vehicle being in the no passing zone and coming back to the right and trying to get back into the lane." He also testified that he smelled alcohol on appellant's breath after the accident.

Ricky Richardson witnessed the accident and testified that his attention was drawn to the vehicles when he heard "a loud revving of engines like cars coming at a high rate of speed"; he definitely heard two engines revving. He testified that the two vehicles were "jockeying for position" and that there was a hill that would have blocked appellant's view of oncoming cars. Richardson estimated the vehicles were going forty or forty-five miles per hour and testified that as appellant tried to pass, Jaimes, rather than pulling over slightly or slowing down, sped up to stop appellant from passing. The two vehicles "touched and collided a little bit," continued for a short distance, collided again, and left the roadway. Two of appellant's friends were following appellant's car and witnessed the accident. They testified that Jaimes was driving slowly until appellant tried to pass, at which point Jaimes accelerated. They did not see Jaimes signal a turn or come to a stop and said he was driving slowly and had traffic backed up behind him.

David Lysek did a full accident reconstruction for this case and believed the vehicles were going about sixty miles per hour. He said he had never seen a forty mile per hour collision

7

cause this kind of damage. Based on marks left on the road and damage to the vehicles, Lysek concluded that Jaimes's truck was going faster than appellant's car at the time of impact and disagreed with Breckenridge's conclusion that Jaimes's truck had braked before the collision.

*Standard of Review*

When reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and ask whether a rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Winkley v. State*, 123 S.W.3d 707, 710 (Tex. App.—Austin 2003, no pet.). In a factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); *Winkley*, 123 S.W.3d at 711. We should exercise our fact jurisdiction "only to prevent a manifestly unjust result." *Winkley*, 123 S.W.3d at 711 (citing *Clewis*, 922 S.W.2d at 135). It is for the fact-finder to resolve any evidentiary conflicts, evaluate witness credibility, and determine the weight to be given the evidence. *Id*. "Any inconsistencies in the evidence should be resolved in favor of the verdict." *Id*. (citing *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).

*Analysis*

The jury convicted appellant of criminally negligent homicide, which is a lesser-included offense of the charged offense of manslaughter, and aggravated assault. The charge instructed the jury that it could convict appellant if it found he caused the victims' injuries by

8

"operating a motor vehicle after consuming an alcoholic beverage [or] . . . at an unsafe speed under the then existing conditions, and/or by passing or attempting to pass . . . in a no passing zone, and/or by failing to maintain assured clear distance, and/or by failing to maintain control" of his vehicle. Appellant argues that because the charge did not require a finding that his car struck Jaimes's truck, the manner in which he was found to have committed the offense was not shown to have caused the victims' injuries. However, we measure the sufficiency of the evidence not against the jury charge actually given but against the elements of the offense as defined by a "hypothetically correct" charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried."). Therefore, we will consider the sufficiency of the evidence as if the charge had required a finding that appellant caused the victims' injuries by striking the truck with his car.

A person commits criminally negligent homicide if he causes another's death by criminal negligence. Tex. Pen. Code Ann. § 19.05(a) (West 2003). "A person acts with criminal negligence, or is criminally negligent, with respect to the circumstances surrounding his conduct or the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur"; the risk must be "of a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id*. § 6.03(d) (West 2003). A person commits aggravated assault if he causes serious bodily injury to another person or uses a deadly weapon during the

9

assault. *Id*. § 22.02(a) (West Supp. 2004-05). A deadly weapon is "anything that in the manner of its *use* or intended use is capable of causing death or serious bodily injury." *Id*. § 1.07(a)(17)(B) (West Supp. 2004-05) (emphasis added).

Appellant argues that Jaimes's conduct was a concurrent cause of the accident such that the evidence is insufficient to support his convictions. We disagree.

Jaimes and Maria testified that Jaimes was not trying to stop appellant from passing and that the accident occurred in a matter of seconds from the time they saw appellant's car pull out from behind the truck. Although Richardson and appellant's friends testified that Jaimes sped up when appellant attempted to pass and Lysek testified that Jaimes was driving faster than appellant, it was for the jury to determine what weight to give to the various witnesses' testimony and we are bound to resolve evidentiary conflicts in favor of the jury's verdict. *See Winkley*, 123 S.W.3d at 711. Further, even if Jaimes's behavior contributed to the accident, appellant attempted to pass illegally and instead of slowing to get back behind Jaimes when he saw the oncoming vehicle, pulled in front of Jaimes with insufficient room to do so safely. Although the evidence was that Jaimes was probably driving somewhere between forty-five and sixty miles per hour in a thirty-five mile per hour zone, the evidence shows that appellant himself was driving sixty miles per hour when his car collided with the truck, and Breckenridge testified that the accident was not primarily caused by speed, but by appellant's attempt to pass on a narrow two-lane road marked as a no-passing zone and near a hill that would have blocked his view of oncoming traffic. The jury could have found that appellant's aggressive driving, even if in part triggered by Jaimes's behavior, caused the accident that killed Nelsi and injured several others. We hold the evidence is legally and factually sufficient

to support a finding that appellant was or should have been aware that attempting to pass gave rise to a substantial and unjustifiable risk and that his failure to perceive the risk or to act to avoid it was a gross deviation from the standard of care an ordinary person would have exercised under the circumstances. *See* Tex. Pen. Code Ann. § 6.03(d). We overrule his second and third points of error.

### Deadly Weapon Findings

In his fourth point of error, appellant argues that the evidence is legally insufficient to show that he used his car as a deadly weapon. He contends that the evidence shows the collision was caused by Jaimes's truck, which was traveling "at an excessive rate of speed."

The question to be answered is whether, viewing all the evidence in the light most favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that appellant's car was used as a deadly weapon. *See Garcia v. State*, 92 S.W.3d 574, 575 (Tex. App.—Austin 2002, no pet.). A deadly weapon is "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B); *see Adame v. State*, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyers, J., concurring) (object not usually considered dangerous may become so through manner in which it is used in offense).

As discussed above, although appellant attempts to characterize the accident as caused by Jaimes's truck "traveling at an excessive speed" and striking appellant's car, the evidence supports a finding that the accident was caused by appellant's attempt to pass in a no-passing zone and under unsafe conditions. Even if we assume Jaimes was traveling at an excessive speed, appellant must have been driving at least that fast to have pulled out from behind, passed alongside, and pulled in front of the truck. Whether Jaimes's truck struck appellant's car or appellant's car

11

struck Jaimes's truck is of no import. The vehicles collided when appellant performed an unsafe passing maneuver and then pulled in front of the truck without enough space to do so safely. A child was killed and several other people were injured, including Jaimes and his front-seat passenger, both of whom were wearing their seatbelts. We cannot say what would have happened had Jaimes reacted differently; the accident was caused by appellant's conduct and the *use* of his automobile. An intent to achieve a specific purpose is not required to support a finding that an object was a deadly weapon in its use. *Garcia*, 92 S.W.3d at 575. The evidence is legally sufficient to support a finding that appellant drove his car in such a manner that it was capable of causing death and serious injury and therefore is sufficient to support the deadly weapon findings. *See Mann v. State*, 13 S.W.3d 89, 91-92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001). We overrule appellant's fourth and final point of error.

**Conclusion**

Having overruled appellant's points of error, we affirm the trial court's judgments of conviction.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 7, 2005

Do Not Publish

12