TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-03-00401-CR

NO. 03-03-00402-CR

NO. 03-03-00403-CR






Saul Hurtado, Appellant


v.


The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NOS. 3020967, 9020998 & 9020999, HONORABLE JON N. WISSER, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 Following a serious car accident in which a child was killed and several other people
were injured, appellant Saul Hurtado was indicted for manslaughter and three counts of aggravated
assault with a deadly weapon. The cases were consolidated for trial, and a jury convicted appellant
of the lesser-included offense of criminally negligent homicide and two of the aggravated assaults. 
The trial court sentenced appellant to five years' imprisonment for each offense, with the sentences
running concurrently, and made affirmative findings of use of a deadly weapon in each offense. 
Appellant raises four points of error, arguing that the trial court erred in admitting scientific evidence
without requiring the State to establish its reliability, the evidence is legally and factually insufficient
to support the convictions, and the evidence is legally insufficient to prove the deadly weapon
findings. We affirm the convictions.

Admission of Evidence

 In his first point of error, appellant contends that the trial court erred in admitting
scientific evidence that he argues was not shown to be reliable. The evidence of which he complains
is the result of a gas chromatography test performed on a blood sample taken from appellant after
the accident, which showed his blood had a 0.04 alcohol concentration. (1) Appellant complains that
the court erred by admitting the evidence "without requiring the [State] to establish its reliability."

 Expert testimony may be admitted under rule 702 of the rules of evidence (2) if the trial
court determines the evidence is reliable. Kelly v. State, 824 S.W.2d 568, 572-73 (Tex. Crim. App.
1992). To be considered reliable, scientific evidence must satisfy three criteria: "(a) the underlying
scientific theory must be valid; (b) the technique applying the theory must be valid; and (c) the
technique must have been properly applied on the occasion in question." Id. at 573. However,
"[t]rial courts are not required to re-invent the scientific wheel in every trial." Hernandez v. State,
116 S.W.3d 26, 29 (Tex. Crim. App. 2003). Once a scientific principle, theory, or methodology has
been accepted by the professional community and the trial courts, other courts may take judicial
notice of the validity of that theory. Id. The transportation code provides that in a prosecution such
as this, evidence of a person's alcohol concentration is admissible if shown by the analysis of blood
taken at the request of a peace officer and in a sanitary place by a qualified medical professional. 
Garcia v. State, 112 S.W.3d 839, 848 (Tex. App.--Houston [14th Dist.] 2003, no pet.) (citing Tex.
Transp. Code Ann. §§ 724.017(a), .064 (West 1999)).

 A trial court's determination on the admissibility of evidence is reviewed for an abuse
of discretion. Montgomery v. State, 810 S.W.2d 372, 378-79 (Tex. Crim. App. 1990). When there
are multiple possible grounds that can be summarized under one general objection and "it seems
from context that [the objecting] party failed effectively to communicate his desire, then reviewing
courts should not hesitate to hold that appellate complaints arising from the event have been lost." 
Meyers v. State, 865 S.W.2d 523, 524-25 (Tex. App.--Houston [14th Dist.] 1993, pet. ref'd) (to
preserve error, defendant must make timely and specific objection, which "allow[s] the trial court
the opportunity to make a determination on the objection and then to proceed with the trial under the
proper procedural and substantive manners, as appropriately corrected by the trial court"; appellate
complaint "that does not comport with the trial objection presents nothing for review").

 Glenn Harbison, chemist with the Austin Police Department, testified that he
performed a gas chromatography test and that the test "has been around since the 40's and 50's. It's
been a pretty standardized workhorse in the chemistry field." Appellant objected that the State's
prosecutor had "not laid the proper predicate" for the testimony, stating:


She [the prosecutor] needs to show under a 702 standard--702, Rules of Evidence,
the reliability--besides the relevance she needs to show also it's reliable evidence,
and she hasn't gone through any of the factors under [Daubert v. Merrell Dow
Pharmaceuticals, Inc., (3)] . . . or Kelly v. State[ (4)]. . . . There are certain standards that
she has to establish scientifically to show reliability of this evidence before it's
admissible.


The trial court responded that "evidence on this piece of instrumentation has been accepted for eons
and is so firmly established that there's no need to engage in further time expenditure" and overruled
the objection. On cross-examination, appellant asked whether appellant's blood alcohol level
reached the standard of legal intoxication. Harbison answered that it did not, and appellant
concluded his questioning.

 Appellant is correct that the State did not present evidence of the conditions under
which appellant's blood sample was tested. However, in his objection, appellant referred to the
Daubert/Kelly factors, which address the reliability of a theory, and rule 702, arguing that the
scientific reliability of the test had not been established. Appellant's objection attacked the
underlying methodology of the gas chromatography test, rather than questioning the conditions under
which the test was performed. When the trial court overruled the objection, making it clear that it
understood appellant to be objecting to the theory underlying the test as opposed to this particular
test, appellant did not clarify his objection or object further. (5) On cross-examination, appellant did
not raise any questions or concerns about the test conditions, Harbison's experience with or
knowledge about the test, or the machine's performance. See Kelly, 824 S.W.2d at 573. By failing
to clarify or object further, appellant waived his specific objection to the reliability of this particular
test. (6) See Meyers, 865 S.W.2d at 525. We overrule appellant's first point of error.

Sufficiency of the Evidence


 In his second and third points of error, appellant argues that the evidence is legally
and factually insufficient to support his conviction. In his second point, he contends that the jury
charge did not require the jury to find that his vehicle struck the vehicle in which the victims were
passengers and that the "manner and means of committing the offense as found by the jury were not
shown to have caused" the victims' injuries. In his third point, appellant argues that the other
driver's conduct was a concurrent cause of the accident that "was sufficient to produce the victims'
resulting injuries" and that appellant's conduct was insufficient to cause the accident.


Factual Summary


 On the evening of May 12, 2002, Pedro Jaimes ("Jaimes") left his sister's house,
driving his children, Nelsi, who was almost two years' old, and Pedrito, another sister named Maria
Jaimes, who was three months pregnant, her husband, and their son. Jaimes testified that he had
driven along the same two-lane road many times in the past; the lanes are divided by double yellow
lines, indicating a no-passing zone. There is very little shoulder and a steep grade to a drainage ditch
on either side. Maria and Jaimes testified that Jaimes stopped to wait to make a left turn, and
appellant, who was driving the car behind them, started honking and acting as if he was going to try
to pass. Jaimes decided not to turn because of oncoming traffic and instead decided to drive ahead
to a point where the road widens into four lanes. He accelerated from a stop, trying to get back up
to the speed limit. Appellant then pulled into the left lane to pass Jaimes; Jaimes said that at that
point, he was no longer accelerating, but was probably driving about thirty-five miles per hour. As
appellant tried to pass, a van approached from the opposite direction, and in an attempt to avoid a
head-on collision, appellant moved back into the right lane, trying to get ahead of Jaimes's truck. 
Appellant's car struck Jaimes's truck, and both vehicles ran off the road and into a ditch. Maria
miscarried her baby and suffered injuries to her head, heart, ribs, and back; her husband suffered
head and back injuries; and Jaimes suffered a broken shoulder. Nelsi, who was not in a child seat
or otherwise restrained in the truck, died as a result of her injuries. The medical examiner testified
that Nelsi might have survived the accident if she had been properly restrained.

 Maria could not remember whether Jaimes was accelerating as appellant tried to pass. 
Jaimes did not recall that he slowed or braked when he noticed appellant trying to pass just before
the accident, nor did he know how fast appellant was going, but he said appellant passed him
quickly. Jaimes was not familiar with the transportation code provision that requires a driver to
maintain or reduce speed when being passed by another car. See Tex. Transp. Code Ann.
§ 545.053(b)(2) (West 1999). Asked whether he could have moved over to allow the car to pass,
he said, "I don't know. Maybe. I don't know. Everything went so fast. I don't know. I was just
trying to stay in my lane." He testified that he usually had a baby seat for Nelsi, but he had removed
it so all of his passengers could fit. Jaimes denied being angry, racing, or playing games with
appellant and said he was not accelerating to stop appellant from passing, but was simply trying to
maintain his lane. Asked whether Jaimes could have slowed and allowed appellant to pass, Maria
said, "But he wouldn't go past. . . . It's almost like he was playing at like, and that's what we
thought about afterwards. How come he didn't just go?"

 A police officer testified that a witness to the accident said it looked like the two
vehicles had been drag racing. Detective Mark Breckenridge did a partial reconstruction of the
accident and determined that Jaimes hit his brakes shortly before the collision. He concluded that
appellant's car was traveling almost sixty miles per hour and that Jaimes was driving between forty-five and sixty miles per hour; the speed limit is thirty-five miles per hour. Breckenridge testified,
"Speed might have played a minor role in this one, but the major role was the vehicle being in the
no passing zone and coming back to the right and trying to get back into the lane." He also testified
that he smelled alcohol on appellant's breath after the accident.

 Ricky Richardson witnessed the accident and testified that his attention was drawn
to the vehicles when he heard "a loud revving of engines like cars coming at a high rate of speed";
he definitely heard two engines revving. He testified that the two vehicles were "jockeying for
position" and that there was a hill that would have blocked appellant's view of oncoming cars. 
Richardson estimated the vehicles were going forty or forty-five miles per hour and testified that as
appellant tried to pass, Jaimes, rather than pulling over slightly or slowing down, sped up to stop
appellant from passing. The two vehicles "touched and collided a little bit," continued for a short
distance, collided again, and left the roadway. Two of appellant's friends were following appellant's
car and witnessed the accident. They testified that Jaimes was driving slowly until appellant tried
to pass, at which point Jaimes accelerated. They did not see Jaimes signal a turn or come to a stop
and said he was driving slowly and had traffic backed up behind him.

 David Lysek did a full accident reconstruction for this case and believed the vehicles
were going about sixty miles per hour. He said he had never seen a forty mile per hour collision
cause this kind of damage. Based on marks left on the road and damage to the vehicles, Lysek
concluded that Jaimes's truck was going faster than appellant's car at the time of impact and
disagreed with Breckenridge's conclusion that Jaimes's truck had braked before the collision.


Standard of Review


 When reviewing the legal sufficiency of the evidence, we view all of the evidence in
the light most favorable to the verdict and ask whether a rational finder of fact could have found the
essential elements of the offense beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7 (Tex.
Crim. App. 2000); Winkley v. State, 123 S.W.3d 707, 710 (Tex. App.--Austin 2003, no pet.). In a
factual sufficiency review, we view the evidence in a neutral light and will set aside the verdict only
if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996); Winkley, 123 S.W.3d at 711. We
should exercise our fact jurisdiction "only to prevent a manifestly unjust result." Winkley, 123
S.W.3d at 711 (citing Clewis, 922 S.W.2d at 135). It is for the fact-finder to resolve any evidentiary
conflicts, evaluate witness credibility, and determine the weight to be given the evidence. Id. "Any
inconsistencies in the evidence should be resolved in favor of the verdict." Id. (citing Moreno v.
State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988)).


Analysis


 The jury convicted appellant of criminally negligent homicide, which is a lesser-included offense of the charged offense of manslaughter, and aggravated assault. The charge
instructed the jury that it could convict appellant if it found he caused the victims' injuries by
"operating a motor vehicle after consuming an alcoholic beverage [or] . . . at an unsafe speed under
the then existing conditions, and/or by passing or attempting to pass . . . in a no passing zone, and/or
by failing to maintain assured clear distance, and/or by failing to maintain control" of his vehicle. 
Appellant argues that because the charge did not require a finding that his car struck Jaimes's truck,
the manner in which he was found to have committed the offense was not shown to have caused the
victims' injuries. However, we measure the sufficiency of the evidence not against the jury charge
actually given but against the elements of the offense as defined by a "hypothetically correct" charge. 
Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997) ("Such a charge would be one that
accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the
State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried."). Therefore, we will consider
the sufficiency of the evidence as if the charge had required a finding that appellant caused the
victims' injuries by striking the truck with his car.

 A person commits criminally negligent homicide if he causes another's death by
criminal negligence. Tex. Pen. Code Ann. § 19.05(a) (West 2003). "A person acts with criminal
negligence, or is criminally negligent, with respect to the circumstances surrounding his conduct or
the result of his conduct when he ought to be aware of a substantial and unjustifiable risk that the
circumstances exist or the result will occur"; the risk must be "of a nature and degree that the failure
to perceive it constitutes a gross deviation from the standard of care that an ordinary person would
exercise under all the circumstances." Id. § 6.03(d) (West 2003). A person commits aggravated
assault if he causes serious bodily injury to another person or uses a deadly weapon during the
assault. Id. § 22.02(a) (West Supp. 2004-05). A deadly weapon is "anything that in the manner of
its use or intended use is capable of causing death or serious bodily injury." Id. § 1.07(a)(17)(B)
(West Supp. 2004-05) (emphasis added).

 Appellant argues that Jaimes's conduct was a concurrent cause of the accident such
that the evidence is insufficient to support his convictions. We disagree.

 Jaimes and Maria testified that Jaimes was not trying to stop appellant from passing
and that the accident occurred in a matter of seconds from the time they saw appellant's car pull out
from behind the truck. Although Richardson and appellant's friends testified that Jaimes sped up
when appellant attempted to pass and Lysek testified that Jaimes was driving faster than appellant,
it was for the jury to determine what weight to give to the various witnesses' testimony and we are
bound to resolve evidentiary conflicts in favor of the jury's verdict. See Winkley, 123 S.W.3d at 711. 
Further, even if Jaimes's behavior contributed to the accident, appellant attempted to pass illegally
and instead of slowing to get back behind Jaimes when he saw the oncoming vehicle, pulled in front
of Jaimes with insufficient room to do so safely. Although the evidence was that Jaimes was
probably driving somewhere between forty-five and sixty miles per hour in a thirty-five mile per
hour zone, the evidence shows that appellant himself was driving sixty miles per hour when his car
collided with the truck, and Breckenridge testified that the accident was not primarily caused by
speed, but by appellant's attempt to pass on a narrow two-lane road marked as a no-passing zone and
near a hill that would have blocked his view of oncoming traffic. The jury could have found that
appellant's aggressive driving, even if in part triggered by Jaimes's behavior, caused the accident
that killed Nelsi and injured several others. We hold the evidence is legally and factually sufficient
to support a finding that appellant was or should have been aware that attempting to pass gave rise
to a substantial and unjustifiable risk and that his failure to perceive the risk or to act to avoid it was
a gross deviation from the standard of care an ordinary person would have exercised under the
circumstances. See Tex. Pen. Code Ann. § 6.03(d). We overrule his second and third points of error.


Deadly Weapon Findings


 In his fourth point of error, appellant argues that the evidence is legally insufficient
to show that he used his car as a deadly weapon. He contends that the evidence shows the collision
was caused by Jaimes's truck, which was traveling "at an excessive rate of speed."

 The question to be answered is whether, viewing all the evidence in the light most
favorable to the verdict, a rational trier of fact could have found beyond a reasonable doubt that
appellant's car was used as a deadly weapon. See Garcia v. State, 92 S.W.3d 574, 575 (Tex.
App.--Austin 2002, no pet.). A deadly weapon is "anything that in the manner of its use or intended
use is capable of causing death or serious bodily injury." Tex. Pen. Code Ann. § 1.07(a)(17)(B); see
Adame v. State, 69 S.W.3d 581, 584 (Tex. Crim. App. 2002) (Meyers, J., concurring) (object not
usually considered dangerous may become so through manner in which it is used in offense).

 As discussed above, although appellant attempts to characterize the accident as
caused by Jaimes's truck "traveling at an excessive speed" and striking appellant's car, the evidence
supports a finding that the accident was caused by appellant's attempt to pass in a no-passing zone
and under unsafe conditions. Even if we assume Jaimes was traveling at an excessive speed,
appellant must have been driving at least that fast to have pulled out from behind, passed alongside,
and pulled in front of the truck. Whether Jaimes's truck struck appellant's car or appellant's car
struck Jaimes's truck is of no import. The vehicles collided when appellant performed an unsafe
passing maneuver and then pulled in front of the truck without enough space to do so safely. A child
was killed and several other people were injured, including Jaimes and his front-seat passenger, both
of whom were wearing their seatbelts. We cannot say what would have happened had Jaimes reacted
differently; the accident was caused by appellant's conduct and the use of his automobile. An intent
to achieve a specific purpose is not required to support a finding that an object was a deadly weapon
in its use. Garcia, 92 S.W.3d at 575. The evidence is legally sufficient to support a finding that
appellant drove his car in such a manner that it was capable of causing death and serious injury and
therefore is sufficient to support the deadly weapon findings. See Mann v. State, 13 S.W.3d 89, 91-92 (Tex. App.--Austin 2000), aff'd, 58 S.W.3d 132 (Tex. Crim. App. 2001). We overrule
appellant's fourth and final point of error.


Conclusion


 Having overruled appellant's points of error, we affirm the trial court's judgments of
conviction.



 __________________________________________

 David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed: July 7, 2005

Do Not Publish
1. A person is legally intoxicated if he has an alcohol concentration of 0.08 or more. Tex.
Pen. Code Ann. § 49.01(2)(B) (West 2003).
2. Rule 702 provides for the admission of expert testimony. Tex. R. Evid. 702.
3. 509 U.S. 579 (1993).
4. 824 S.W.2d 568 (Tex. Crim. App. 1992).
5. The trial court was correct in its ruling that the gas chromatography test has been proven
reliable. See Combs v. State, 6 S.W.3d 319, 322 (Tex. App.--Houston [14th Dist.] 1999, no pet.)
(discussing reliability of gas chromatography test in identifying substances). Cf. Hernandez v. State,
116 S.W.3d 26, 30 (Tex. Crim. App. 2003) (no evidence to show machine's scientific reliability).
6. Appellant's complaint is somewhat ambiguous even on appeal--he states that his
complaint is not about the underlying scientific theory but the "reliability of the testing performed
on appellant's blood," but goes on to say that the trial court did not require the State "to establish the
reliability of the scientific testing at issue," citing to Daubert, Kelly, and Hernandez, which address
how an underlying scientific theory or piece of scientific testing equipment is to be shown reliable.